IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS HENDRICKSON, ROBERT B. McCOLLOUGH, ERIC GARNETT, NATHANIEL BAGWELL, DANIEL TORRES, BENJAMIN CRUMP, BILLY R. WILLIAMS, TORY BRAXTON, JARON BENNEFIELD, MARK SPRUANCE, CHARLES ABNEY, PAUL J. PROPER, DETLEF F. HARTMANN, HUGH McCAFFERTY, JAMES E. FLOWERS, THOMAS A. HOLLINGSWORTH, JR., WILLIAM HAWKINS, MICHAEL K. DUKE, JAMES McCULLIN, DAVID L. MAYFIELD, CARLTON FARBER, TYRENCE PURNELL and LINFORD FISHER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 03-557-KAJ |
| MICHAEL McCREANOR, BETTY BURRIS, F. DIXON, L. SMITH, CAPT. CAIN, C. OUTTEN, EDWARD WALLACH, JEFF CROTHERS, THOMAS L. CARROLL, STANLEY TAYLOR, JANE BRADY, ANDRE R. JACKSON, CAPT. HAZZARD, LT. HARVEY, WILFRED BECKLES, LT. WILLEY, and LT. SATTERFIELD | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

---

Thomas Hendrickson, Eric Garnett, Nathaniel Bagwell, Benjamin Crump, Billy R. Williams, Tory Braxton, Jaron Bennefield, Mark Spruance, Charles Abney, Paul J. Proper, Detlef F. Hartmann, Hugh McCafferty, William Hawkins, James McCullin, Linlord Fisher, Delaware Correctional Center, 1181 Paddock Rd., Smyrna, Delaware 19977; Pro Se.

Robert B. McCullough, 1405 Two Mile Rd., Harrington, Delaware 19952; Pro Se.

Daniel Torres, 431 South Jackson St., Wilmington, Delaware 19805; Pro Se.

James E. Flowers, 2106 Washington St., Wilmington, Delaware 19802; Pro Se.

Thomas A. Hollingsworth, Jr., 413 East Water St., Dover, Delaware 19901; Pro Se.

Micahel K. Duke, 328 New Castle Lane, Swedesboro, New Jersey 08085; Pro Se.

David L. Mayfield, Howard R. Young Correctional Facility, 1301 East 12th St., P.O. Box 9561, Wilmington, Delaware 19809; Pro Se.

Carlton Farber, 27216 Seaford Rd., Seaford, Delaware 19973; Pro Se.

Tyrence Purnell, 11804 Evans Dr., Coverdale Crossroads, Bridgeville, Delaware 19933; Pro Se.

Eileen Kelly, Esq., Department of Justice, 820 N. French St., 6th Floor, Wilmington, Delaware 19801; Counsel for Defendant.

---

September 6, 2005
Wilmington, Delaware

JORDAN, District Judge

## I. INTRODUCTION

Before me is a Motion for Summary Judgment (Docket Item ["D.I."] 305; the "Motion") filed by defendants Michael McCreanor, Betty Burris, F. Dixon, L. Smith, Capt. Cain, C. Outten, Edward Wallach, Jeff Crothers, Thomas L. Carroll, Stanley Taylor, Jane Brady, Andre R. Jackson, Capt. Hazzard, Lt. Harvey, Wilfred Beckles, Lt. Willey, and Lt. Satterfield ("Defendants").[1] Also before me are sixteen motions filed by Plaintiff Nathaniel Bagwell ("Bagwell"), including three Motions for Appointment of Counsel (D.I. 226, 227, 237), two Motions to Compel (D.I. 306, 307), two Motions for Attorney's Fees (D.I. 227, 237), a Motion to Amend the Complaint to add additional plaintiffs (D.I. 239), a Motion for Miscellaneous Relief to obtain additional copies from the law library at the prison facility (D.I. 301), a Motion to Stay (D.I. 309), a Motion for a Venue Transfer (D.I.

---

[1] In their Motion, Defendants ask "that the complaint be dismissed under Fed. R. Civ. P. 12(b)(1)" and "request that the complaint be dismissed for failure to state a claim, or in the alternative, on grounds of qualified immunity." (D.I. 305 at 1, 4-5.) A motion to dismiss for failure to state a claim upon which relief can be granted is one made pursuant to Fed. R. Civ. P. 12(b)(6); a Rule 12(b)(1) motion is made for lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b). Here, the complaint alleges violations of the plaintiffs' First, Eighth, and Fourteenth Amendment rights. (D.I. 1.) Such matters are clearly within the jurisdiction of this court. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Since Defendants do not challenge subject matter jurisdiction in their Motion, I will consider the Motion as having been made pursuant to Fed. R. Civ. P. 12(b)(6). Here, however, Defendants' motion relies not only on the pleadings, but also on the affidavit of Deputy Warden David Pierce. (D.I. 305 at ¶4.) Rule 12(b) states that "if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...". Fed. R. Civ. P. 12(b)(6). Therefore, because Deputy Warden Pierce's affidavit is outside the pleadings, this motion will be treated as one for summary judgment. Finally, I need not consider the issue of qualified immunity because summary judgment will be granted on the grounds that the No Talking rule is constitutional.

...

322), a Motion for Reconsideration (D.I. 324), a Motion for Sanctions (D.I. 339), a Motion seeking an order to arrest Defendant Wilfred Beckles (D.I. 342), a Motion Seeking Order to Appear at a hearing (D.I. 359), and a Motion to Compel the law librarian to copy exhibits (D.I. 369). Additionally, I am presented with nine motions filed by plaintiff David L. Mayfield ("Mayfield"), including three Motions to Amend the Complaint (D.I. 267, 328, 378), a Motion for Medical Relief (D.I. 331), two Motions for Appointment of Counsel (D.I. 335, 336), a Motion for Hearing (D.I. 335), and two Motions for Reconsideration (D.I. 332, 337). Finally, there is a pending Motion for Summary Judgment filed by plaintiff Thomas Hendrickson ("Hendrickson") (D.I. 311).

The Complaint in this case was filed by a group of prisoners ("Plaintiffs")[2] housed at the Delaware Correctional Center ("DCC")[3] alleging violations of their First, Fourteenth, and Eighth Amendment Rights. (D.I. 1 at 17, ¶ 3.) Jurisdiction over Plaintiffs' claims is proper under 28 U.S.C. § 1331.

For the reasons that follow, I will grant Defendants' Motion for Summary Judgment (D.I. 305). As a result, I will deny as moot Bagwell's motions (D.I. 226, 227, 237, 239, 301, 306, 307, 309, 322, 324, 339, 342, 359, 369) and Mayfield's motions (D.I. 267, 328, 331, 332, 335, 336, 337, 378). Finally, because I am granting Defendants' Motion for Summary Judgment, I will deny Hendrickson's Motion for Summary Judgment (D.I. 311).

---

[2] Twenty-three plaintiffs remain in this suit, as noted in the case caption.

[3] Not all of the Plaintiffs in this action remain incarcerated at DCC. For example, Mayfield is now incarcerated at the Howard R. Young Correctional Institution ("HRYCI"). (See D.I. 365.)

## II. BACKGROUND

When it was commenced, this suit was a purported "class-action" with over 200 Plaintiffs, coordinated and led by Bagwell. (See D.I. 1 at 7-16.) Presently, twenty-three Plaintiffs remain in the case.[4] Plaintiffs assert that their rights under the First, Fourteenth, and Eighth Amendments are being violated by a rule that prohibits inmates from speaking during meal times in the dining hall at DCC (the "No Talking" rule). (D.I. 1 at 17, ¶¶ 1-2.) Plaintiffs allege that the rule itself is "arbitrary, capricious and unlawful," and that the Department of Corrections has no rule preventing them from talking. (D.I. 326 at ¶ 1.) In support of this contention, Plaintiffs note that the regulation Defendants submitted with their motion had neither "a procedure number nor a policy number." (Id.) Further, in the Complaint, Plaintiffs allege that the application of the rule to them was unlawful. (D.I. 1 at 17-18, ¶¶ 3-4.) They complain that the corrections officers allowed white inmates to talk while punishing African American inmates for the same behavior. (Id. at 30, ¶ 19.) Plaintiffs allege that officers at DCC told the inmates "no! (sic) talking in the chow hall" and, if the inmates did talk, the officers would "write them up and put them on lockdown." (Id. at 17-18, ¶¶ 2, 4.) Bagwell further asserts that he was given a "direct threat" when he was allegedly told by defendant L. Smith: "no! (sic) talking in my chow hall, because I will give you a 24."[5] (Id. at 20, ¶ 8.)

---

[4] Some of the Plaintiffs have withdrawn (see D.I. 8, 10, 11, 12, 13, 14, 31, 63, 87), and others were dismissed from the action. (See D.I. 29, 30 (undeliverable mail return), and 92 (dismissing without prejudice plaintiffs who have failed to submit a request to proceed in forma pauperis and a certified copy of a trust account statement within 30 days pursuant to my July 2, 2003 Order, D.I. 6).)

[5] Bagwell notes that a "24" means "a 24 hour lockdown." (D.I. 1 at 20, ¶ 8.)

Plaintiffs argue that the No Talking rule and its application to them by Defendants deprives them of their First and Fourteenth Amendment Rights to free speech, due process, and equal protection, and subjects them to "cruel and unusual punishment in violation of the [Eighth] amendment." (Id. at 17-18, 21, ¶¶ 3-4, 8.)[6]

Defendants, however, assert that the No Talking rule is not a violation of Plaintiff's constitutional rights, and that the rule is a "reasonable regulation[] with legitimate penological objectives." (D.I. 305 at ¶ 2-3.) Defendants explain the reasons for the No Talking rule through the affidavit of DCC Deputy Warden David Pierce ("Pierce"). (Id. at ¶ 4, Exhibit ["Ex"] G.) Pierce states that the dining hall can accommodate 128 inmates, is "cavernous and it resonates," and is supervised by two staff members. (Id. at Ex. G ¶ 4.) Pierce states that he considers the dining hall to be "the most dangerous place in the prison" where "the worst incidents of violence" can occur. (Id. at ¶ 7.) Further, Pierce states that "if inmates were permitted to talk in the dining hall, the task of supervising them would become far more dangerous for the two officers assigned there." (Id. at ¶ 11.) Plaintiffs respond that if an inmate wanted to inflict harm on an officer, he could do it anywhere in the prison, not just in the dining hall. (D.I. 326 at 3.) Further, Plaintiffs suggest various ways to monitor and control sound in the dining hall, so that they could be allowed to talk. (D.I. 326 at 3-4; D.I. 376 at ¶ 69.)

---

[6] Plaintiffs' Fourteenth Amendment due process claims, pursuant to 28 U.S.C. § 1915A(b)(1), we previously dismissed as frivolous. (See D.I. 215.)

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment on the "No Talking" Rule

Defendants' Motion for Summary Judgment on Plaintiffs' challenge to the No Talking rule is granted.[7] In determining whether "a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). A challenged prison regulation is evaluated through the examination of four factors: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-91. Here, the facts of the case are not disputed. Defendants have presented, and Plaintiffs have not countered, facts that show the reasonableness of the No Talking regulation under the four factors articulated in *Turner*. Each of those factors is discussed in turn below.

---

[7] Resolving Defendants' motion for summary judgment in their favor also resolves the issues presented by Hendrickson's motion for summary judgment (D.I. 311.) Hendrickson's motion for summary judgment is therefore denied.

### 1. Valid, Rational Connection between the Regulation and Governmental Interests

First, there is a valid, rational connection between the No Talking regulation and the legitimate governmental interest in prison safety generally and in security in the dining hall in particular. During mealtimes, 128 inmates are supervised by just two staff members. (D.I. 305 at Ex. G ¶ 4.) Given the level of noise that a large number of inmates in one area could generate, Pierce, the Deputy Warden at the DCC, asserted that "it would be impossible" for the guards to effectively supervise the inmates if they were allowed to talk. (*Id.* at Ex. G ¶ 4.) Further, the No Talking rule is naturally connected with other rules related to ensuring safety of inmates and staff during mealtimes, such as having the inmates sit in the same order in which they entered the hall, permitting inmates only one tray per meal, and not allowing inmates to pass food to inmates at other tables. (*Id.* at Ex. G ¶ 5.) As pointed out in Pierce's affidavit, corrections officers are best able to supervise and ensure the orderly entrance and exit of the inmates, along with a timely distribution of the food, if they are not distracted by noise or an inmate attempting to engage them in conversation. (*Id.* at Ex. G ¶ 6.)

When, as in this case, the First Amendment rights of an inmate are at issue, an additional question used in evaluating a contested regulation is whether it operates in a neutral fashion, without regard to the content of the speech. See *Turner*, 482 U.S. at 90, *citing Pell v. Procunier*, 417 U.S. 817, 828 (1974). Here, the regulation in question is content neutral, as it prevents all speech, without regard to the topic of conversation. (D.I. 305 at Ex. G ¶ 2.) Therefore, the first *Turner* factor weighs in favor of Defendants.

7

### 2. Alternative Means for Exercising Inmates' First Amendment Rights

The No Talking regulation does leave available alternative means for inmates to exercise their First Amendment rights. When evaluating alternative means, "courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'" *Turner*, 482 U.S. at 90, *quoting Pell*, 417 U.S. at 827. Here, the No Talking regulation operates only at mealtimes and therefore leaves open other times and places where inmates can express themselves. (D.I. 305 at ¶ 3.) Inmates are permitted to talk to one another when they are outside of the dining hall, which is the majority of each day. (*Id.*) The "Inmate Rules for Maximum Housing Unit" states that "inmates may express their views in a non-disruptive and peaceful manner." (*Id.* at Ex. G, "General Conduct/Rules" at 22.) Therefore, because inmates have alternative methods of communication open to them, the second factor in the *Turner* analysis also weighs in favor of Defendants.

### 3. Impact of Accommodation on Other Inmates, Guards and Allocation of Prison Resources

Altering the No Talking rule would greatly impact guards, other inmates, and prison resources. Where an accommodation will have a significant effect on others in the prison, courts should be especially deferential to the decisions of prison administrators. *Turner*, 482 U.S. at 90, *citing Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 132-33 (1977).

Deputy Warden David Pierce states that the dining hall is "probably the most dangerous place in the prison." (D.I. 305 at Ex. G ¶ 7.) Without the "No Talking" rule, it

would be difficult if not impossible for the two guards in the dining hall to monitor the prisoners effectively. (*Id.* at Ex. G ¶¶ 4, 6-11.) As a result, the risk to the officers assigned to the dining hall and the inmates in the dining hall would increase unacceptably. (*Id.* at Ex. G ¶ 11.) Because prison resources and the prison community would be adversely affected by such an accommodation, this factor also weighs in favor of Defendants.

### 4. Absence of Alternatives to the Challenged Regulation

Finally, the absence of easy or ready alternatives to the No Talking rule is evidence of the reasonableness of the regulation. *Turner*, 482 U.S. at 90-91. To be valid, the disputed prison regulation does not have to be the least restrictive alternative. *Id.* However, if an inmate can point to an alternative that will have a *de minimis* effect on penological interests, that is evidence that the regulation is unreasonable. *Id.*

Here, however, there is no obvious, easy alternative for ensuring order and safety in a dining hall with a large number of inmates and only two corrections officers. Defendants state that a "half-way" measure between talking and no talking, in other words a "some talking" rule, is not a viable option. (D.I. 305 at ¶3.) Plaintiffs claim that prison safety would not be compromised by allowing inmates to talk in the dining hall because if an "(inmate) wanted to inflicted (sic) harm on a (sic) officer a (sic) inmate could did (sic) it at (sic) any where at the prison." (D.I. 326 at 3.) But that argument actually strengthens the Defendants argument that the dining hall is a dangerous place that must be closely monitored. As an alternative, Plaintiffs suggest that a "sound monitor" be installed in the dining hall. (*Id.* at 3-4.) Such a monitor would trigger an

9

alarm if the noise level in the dining hall became too high. (*Id.* at 3-4.) Plaintiffs also suggest a "low talking" policy, combined with proper soundproofing. (D.I. 376 at ¶ 69.) Neither of these suggestions provides an effective alternative to the safety and order provided by the No Talking regulation. (D.I. 305 at ¶ 3.) Indeed, by asking that prison officials abandon the bright line provided by the No Talking rule, the plaintiffs invite the very arbitrariness they complain of now. Therefore, this final factor also weighs in favor of Defendants.

After weighing all four of the *Turner* factors in light of the undisputed material facts, it is clear that Defendants are entitled to summary judgment in this case. As a matter of law, the prohibition on talking in the dining hall at DCC is a valid regulation rationally connected to the state's interest in the safety of the corrections officers and of the inmates themselves. *Turner*, 482 U.S. 78 at 89.

### B. The Bagwell and Mayfield Motions

As a result of the grant of summary judgment to Defendants, all of Bagwell's and Mayfield's outstanding motions will be denied as moot. Plaintiffs' case is concluded by the grant of summary judgment to Defendants, and the outstanding motions (D.I. 226, 227, 237, 239, 267, 301, 306, 307, 309, 322, 324, 328, 331, 332, 335, 336, 337, 339, 342, 359, 369, 378) therefore have no remaining relevance.

### V. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (D.I. 305) will be granted, and Plaintiff Hendrickson's Motion for Summary Judgment (D.I. 311) will be denied. Plaintiff Bagwell's motions (D.I. 226, 227, 237, 239, 301, 306, 307, 309, 322,

324, 339, 342, 359, 369) and Plaintiff Mayfield's motions (D.I. 267, 328, 331, 332, 335, 336, 337, 378) will be denied as moot. An appropriate order will follow.